Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD WALLACE,<br><br>      Plaintiff,<br><br>      v.<br><br>MONMOUTH REAL ESTATE INVESTMENT CORPORATION, KIERNAN CONWAY, DANIEL D. CRONHEIM, CATHERINE B. ELFLEIN, BRIAN H. HAIMM, NEAL HERSTIK, MATTHEW I. HIRSCH, EUGENE W. LANDY, MICHAEL P. LANDY, SAMUEL A. LANDY, KEVIN S. MILLER, GREGORY T. OTTO, SONAL PANDE, and SCOTT L. ROBINSON,<br><br>      Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Richard Wallace ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

1

## NATURE OF THE ACTION

1. This is an action against Monmouth Real Estate Investment Corporation ("Monmouth" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Monmouth by Equity Commonwealth ("EQC").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of Monmouth common stock.

7. Defendant Monmouth is a public equity real estate investment trust (REIT) that specializes in single tenant, net-leased industrial properties, subject to long-term leases, primarily to investment-grade tenants. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "MNR."

8. Defendant Kiernan Conway ("Conway") is a director of the Company.

9. Defendant Daniel D. Cronheim ("Cronheim") is a director of the Company.

10. Defendant Catherine B. Elflein ("Elflein") is a director of the Company.

11. Defendant Brian H. Haimm ("Haimm") is a lead director of the Board of the Company.

12. Defendant Neal Herstik ("Herstik") is a director of the Company.

13. Defendant Matthew I. Hirsch ("Hirsch") is a director of the Company.

14. Defendant Eugene. W. Landy ("E. Landy") is Founder and Chairman of the Board of the Company.

15. Defendant Michael P. Landy ("M. Landy") is President, Chief Executive Officer, and a director of the Company.

16. Defendant Samuel A. Landy ("S. Landy") is a director of the Company.

17. Defendant Kevin S. Miller ("Miller") is Chief Financial Officer, Chief Accounting Officer, and a director of the Company.

18. Defendant Gregory T. Otto ("Otto") is a director of the Company.

19. Defendant Sonal Pande ("Pande") is a director of the Company.

20. Defendant Scott L. Robinson ("Robinson") is a director of the Company.

21. Defendants Conway, Cronheim, Elflein, Haimm, Herstik, Hirsch, E. Landy, M. Landy, S. Landy, Miller, Otto, Pande, and Robinson are collectively referred to herein as the "Individual Defendants."

22. Defendants Monmouth and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On May 4, 2021, Monmouth and EQC announced that they had entered into a definitive merger agreement by which EQC would acquire Monmouth in an all-stock transaction. Under the terms of the agreement, Monmouth shareholders will receive 0.67 shares of EQC stock for every share of Monmouth stock they own. The press release announcing the Proposed Transaction states, in pertinent part:

**Equity Commonwealth to Acquire Monmouth Real Estate for $3.4 Billion**

*Equity Commonwealth to Transition into the Industrial Sector*

May 04, 2021 11:19 PM Eastern Daylight Time

CHICAGO & HOLMDEL, N.J.--(BUSINESS WIRE)--Equity Commonwealth (NYSE: EQC) and Monmouth Real Estate Investment Corporation (NYSE: MNR), or Monmouth, today announced that they have entered into a definitive merger agreement by which Equity Commonwealth will acquire Monmouth in an all-stock transaction, valued at approximately $3.4 billion, including the assumption of debt. The combined company is expected to have a pro forma equity market capitalization of approximately $5.5 billion.

Under the terms of the agreement, Monmouth shareholders will receive 0.67 shares of Equity Commonwealth stock for every share of Monmouth stock they own. Based on the closing price for Equity Commonwealth on May 4, 2021, this represents approximately $19.40 per Monmouth share. The merger agreement provides for Monmouth to declare and pay one additional regular quarterly common stock dividend of $0.18 per share without Equity Commonwealth paying

4

a corresponding common dividend to its shareholders. Accordingly, the total consideration to be received by the Monmouth shareholders in the transaction is $19.58 per Monmouth share.

Equity Commonwealth and Monmouth shareholders are expected to own approximately 65% and 35%, respectively, of the pro forma company following the close of the transaction.

\* \* \*

**Leadership and Governance**

Strong corporate governance will continue to be paramount at Equity Commonwealth. The company will continue to be led by President and Chief Executive Officer David Helfand and the existing senior management team. Upon closing, the number of trustees on Equity Commonwealth's board will be expanded to 10, with two individuals designated by Monmouth's board. Sam Zell will remain the Chairman of the Board of Trustees.

**Dividend Policy**

Monmouth plans to continue to pay its regular quarterly common stock dividend and its Series C Cumulative Redeemable Preferred Stock dividend between signing and closing of the transaction.

Equity Commonwealth expects to begin paying a quarterly dividend after the transaction has closed. The Board of Trustees will determine the timing and amount of the dividend.

**Transaction Timing & Approval**

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including approval by the common shareholders of both Equity Commonwealth and Monmouth.

The Board of Trustees of Equity Commonwealth and the Board of Directors of Monmouth Real Estate have each unanimously approved the transaction.

**Advisors**

Goldman Sachs & Co. LLC is acting as financial advisor and Fried, Frank, Harris, Shriver and Jacobson LLP is serving as legal advisor to Equity Commonwealth. J.P. Morgan Securities LLC and CS Capital Advisors, LLC are acting as financial advisors and Stroock & Stroock & Lavan LLP is serving as legal advisor to Monmouth.

\* \* \*

**<u>About Equity Commonwealth</u>**

Equity Commonwealth (NYSE: EQC) is a Chicago based, internally managed and self-advised real estate investment trust (REIT) with commercial office properties in the United States. EQC's portfolio is comprised of 4 properties totaling 1.5 million square feet.

**<u>About Monmouth</u>**

Monmouth Real Estate Investment Corporation (NYSE: MNR), founded in 1968, is one of the oldest public equity REITs in the world. Monmouth specializes in single tenant, net-leased industrial properties, subject to long-term leases, primarily to investment grade tenants. Monmouth is a fully integrated and self-managed real estate company, whose property portfolio consists of 120 properties, containing a total of approximately 24.5 million rentable square feet, geographically diversified across 31 states.

24. On July 2, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

25. The Registration Statement, which recommends that Monmouth shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Monmouth's, EQC's, and the combined company's financial projections; (ii) the financial analyses performed by Monmouth's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and CSCA Capital Advisors, LLC ("CSCA"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving CSCA.

26. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the MNR Board of Board of Directors and its Reasons for the Merger; (ii) Opinions of MNR's Financial Advisors; (iii) Certain EQC Unaudited Prospective Financial Information; and (iv)

6

Certain MNR Unaudited Prospective Financial Information.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Monmouth shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Monmouth's, EQC's, and the Combined Company's Financial Projections**

28. The Registration Statement omits material information concerning Monmouth's, EQC's, and the combined company's financial projections.

29. With respect to the "*MNR Multi-Year Projected Financial Information*," the Registration Statement fails to disclose: (1) all line items underlying (i) Cash Net Operating Income, (ii) Adjusted EBITDA, (iii) FFO per Share, and (iv) AFFO per Share; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30. With respect to the projections of "*EQC on a Stand-alone Basis*," "*MNR on a Stand-alone Basis*," and "*Combined Company on a Pro Forma Basis Giving Effect to the Merger*," the Registration Statement fails to disclose: (1) all line items underlying (i) Net Operating Income, (ii) EBITDA, (iii) Adjusted EBITDA, (iv) Funds from Operations, and (v) Unlevered Free Cash Flow; (2) Monmouth's, EQC's, and the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

31. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders

cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

32. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

34. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan and CSCA.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 14, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

35. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan and CSCA in rendering their purported fairness opinions must be fairly disclosed to Monmouth shareholders. The description of J.P. Morgan's and CSCA's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Monmouth shareholders are unable to fully understand J.P. Morgan's and CSCA's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

A. *J.P. Morgan's Analyses*

36. With respect to J.P. Morgan's "*Public Trading Multiples*" analysis of Monmouth and EQC and "*Transaction Multiples Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction J.P. Morgan observed in its analyses.

37. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) the unlevered free cash flows that Monmouth and EQC are expected to generate during fiscal years 2021E through 2025E, and all underlying line items; (2) the range of terminal values for Monmouth and EQC; (3) the individual inputs and assumptions underlying the (i) perpetual growth rates ranging from 1.75% to 2.25%, in the case of Monmouth, and 2.00% to 2.50%, in the case of EQC, and (ii) discount rates ranging from 6.25% to 6.75% for Monmouth, and 6.50% to 7.00% for EQC; (4) the estimates of the net operating income for each of Monmouth and EQC at the end of fiscal-year 2025E; and (5) the net debt and other adjustments for each company as of March 31, 2021.

### B. *CSCA's Analyses*

38. With respect to CSCA's "*Selected Comparable Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction CSCA observed in its analyses.

39. With respect to CSCA's "*Capitalization Rate Valuation Analysis*," the Registration Statement fails to disclose the individual inputs and assumptions underlying the range of cash capitalization rates from 4.75% to 5.50% for Monmouth and from 4.50% to 6.00% for EQC.

40. With respect to CSCA's "*Premiums Paid Analysis*," the Registration Statement fails to disclose each transaction and the premiums paid therein.

41. The Registration Statement fails to disclose the following concerning CSCA's "*Discounted Cash Flow Analysis*" of Monmouth and EQC: (1) the respective unlevered free cash flow for Monmouth and EQC from April 1, 2021 through December 31, 2025, and all underlying line items; (2) the range of terminal values of Monmouth and EQC; and (3) the individual inputs and assumptions underlying the (i) range of discount rates from 6.00% to 6.50% and from 6.75% to 7.25%, and (ii) range of EBITDA multiples of 18.0x to 22.0x and of 14.0x to 16.0x.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving CSCA

42. The Registration Statement omits material information concerning potential conflicts of interest involving CSCA.

43. The Registration Statement provides that "CSCA may be paid additional fees at CSCA's standard hourly rates for any time incurred should CSCA be called upon to support its findings or provide further services related to its opinion subsequent to the delivery of its opinion."

44. The Registration Statement, however, fails to disclose: (1) CSCA's standard hourly rates; and (2) whether CSCA received or expects to receive fees in connection with supporting its

10

findings or providing further services related to its opinion subsequent to the delivery of its opinion.

45. The Registration Statement further fails to disclose the timing and nature of the past services CSCA and/or its affiliates provided EQC and/or its affiliates, including the amount of compensation CSCA received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

46. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

47. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

51. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the false and misleading Registration Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 14, 2021            Respectfully submitted,

**HALPER SADEH LLP**

By: <u>/s/ Daniel Sadeh</u>
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*